IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STREAMLINE CONSULTING GROUP LLC, | ) ) ) | CIVIL NO. 15-00318 SOM/KSC |
| Plaintiff, | ) ) ) | ORDER (1) DETERMINING THAT CLAIMS ARISING UNDER THE SERVICING AND |
| vs. | ) ) | NON-CIRCUMVENTION AGREEMENTS ARE SUBJECT TO ARBITRATION |
| LEGACY CARBON LLC, dba HAWAIIAN LEGACY CARBON; | ) ) ) | AND DENYING MOTION TO DISMISS; (2) DENYING REQUEST |
| HAWAIIAN LEGACY REFORESTATION INITIATIVE, dba HAWAIIAN LEGACY HARDWOODS, dba HAWAIIAN LEGACY FORESTS, dba, LEGACY FORESTS, dba LEGACY TREES; | ) ) ) ) ) ) ) | FOR FEES; AND (3) STAYING CASE EXCEPT WITH RESPECT TO THE ISSUE OF WHICH DEFENDANTS ARE SUBJECT TO THE ARBITRATION AGREEMENT |
| HLH LLC, aka HAWAIIAN LEGACY HARDWOODS, LLC; | ) ) ) | |
| LEGACY HARDWOODS, INC., aka HAWAIIAN LEGACY HARDWOODS, INC,; | ) ) ) ) | |
| LEGACY HOLDINGS LLC, aka HAWAIIAN LEGACY HOLDINGS, LLC; | ) ) ) ) | |
| JEFFREY DUNSTER; and | ) ) | |
| JOHN DOES, | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**ORDER (1) DETERMINING THAT CLAIMS ARISING UNDER THE SERVICING AND NON-CIRCUMVENTION AGREEMENTS ARE SUBJECT TO ARBITRATION AND DENYING MOTION TO DISMISS; (2) DENYING REQUEST FOR FEES; AND (3) STAYING CASE EXCEPT WITH RESPECT TO THE ISSUE OF WHICH DEFENDANTS ARE SUBJECT TO THE ARBITRATION AGREEMENT**

I.        INTRODUCTION.

The main issue before this court is whether claims that

Defendants breached a Services Agreement and a Non-Circumvention

Agreement must be arbitrated.  The court determines that all claims arising under either the Services Agreement or the Non-Circumvention Agreement must be arbitrated.  However, this court reserves to itself the issue of which parties are covered by the arbitration agreement.  The court therefore stays this case except with respect to that issue.  The court denies Defendants' motion to dismiss and request for fees.

II.      **FACTUAL BACKGROUND.**

   **A.   The Services Agreement.**

   Streamline Consulting Group is a District of Columbia limited liability company that says it "provides consulting services in the management of business development, data and information, and capacity building for project developers raising and placing capital in eco-asset markets, including renewable energy, nutrient credits, energy efficiency, carbon offsets, and mitigation banking."  Complaint ¶ 1, ECF No. 1, PageID # 2.

   On or about January 3, 2014, Streamline entered into a contract with Hawaiian Legacy Carbon LLC. ("Services Agreement") See ECF No. 1-1, PageID # 22.  The Services Agreement lists a Coelho Way address for Hawaiian Legacy Carbon LLC.  Id.

   The Services Agreement says that Hawaiian Legacy Carbon, "through its affiliate[,] Hawaiian Legacy Hardwoods, is a project developer that plants trees, restores degraded land, provides ecotourism, and creates products in the form of RFID

2

tacks and ecosystem service credits." Id.  Hawaiian Legacy

Hardwoods is also called "HLH" in the Services Agreement.  Id.

 Pursuant to the Services Agreement, Streamline was to

"assist in implementing [Hawaiian Legacy Carbon's] business plan"

by, among other things (1) coordinating and creating a retail

program or plan to sell carbon offset and water quality and

trading credits; (2) introducing Hawaiian Legacy Carbon

affiliates to people or companies that raised capital or sold

products; (3) assisting with retail strategies and grant

proposals; and (4) including Streamline's president's biography

in Hawaiian Legacy Carbon and Hawaiian Legacy Hardwoods

"marketing documentation and website." Id.  In return, Hawaiian

Legacy Carbon and Hawaiian Legacy Hardwoods promised to pay a fee

of 3.5% of the "awarded project funding." Id.

 The Services Agreement had an arbitration provision

stating:

> Any controversy or claim arising out of, or
> relating to this agreement, or breach
> thereof, which is not settled amicably by and
> between the signatories within a period of 30
> days shall be settled through binding
> arbitration in accordance with the laws of
> the defending state.

Id., PageID # 24.

 The Services Agreement was executed on behalf of

Hawaiian Legacy Carbon by Jeffrey Dunster, its co-founder, in

early January 2014.  Id.

Streamline alleges that Defendants, who appear to all
be citizens of Hawaii, breached the Services Agreement by failing
to pay amounts due.  From April 2, 2014, through July 22, 2014,
these amounts allegedly equaled $28,610.71.  Complaint ¶ 23.

**B.  The Non-Circumvention Agreement.**

On or about December 17, 2013, which was a few weeks
before the Services Agreement was executed, Hawaiian Legacy
Hardwoods, LLC, entered into a Non-Circumvention Agreement with
Streamline.  See ECF No. 1-2.  Through this agreement, Hawaiian
Legacy Hardwoods, which has the same Coelho Way address as
Hawaiian Legacy Carbon, agreed not to "circumvent, avoid, bypass,
or obviate directly or indirectly, the creation or pursuit of the
Collaboration [defined as the mutually beneficial business
relationship that might involve third parties] by entering into
any direct or indirect negotiations, communications, or
transactions with, or by soliciting or accepting any business or
financing from or on behalf of an Introduced Party . . . ."  Id.,
PageID # 28.  If it breached this provision, Hawaiian Legacy
Hardwoods promised to pay Streamline a fee of 20% of the total
value of the money involved.  Id.

The Non-Circumvention Agreement was executed by Dunster
on behalf of Legacy Hardwoods, LLC, even though, in the first
paragraph of the Non-Circumvention Agreement, it is Hawaiian
Legacy Hardwoods, LLC, that is listed as a party to that

4

agreement.  <u>See</u> ECF No. 1-2, PageID # 30.

The Complaint alleges that Streamline introduced Defendants to key personnel at the Cambridge office of a company called The Gold Standard in connection with an award-winning certification standard for carbon mitigation projects.  <u>See</u> Complaint ¶¶ 33-35, ECF No. 1, PageID # 10.  The Complaint alleges that, after Defendants failed to pay its bills, Defendants began communicating and negotiating with The Gold Standard directly.  <u>Id.</u> ¶ 36.  The Complaint alleges that, as a result, Defendants owe Streamline $300,000.  <u>Id.</u> ¶ 41, PageID # 11.

> **C.   Allegations and Facts Concerning Piercing the Corporate Veil, Alter Ego, and Joint Tortfeasor Liability.**

Although the Services Agreement was executed by Hawaiian Legacy Carbon LLC, and although the Non-Circumvention Agreement was executed by Legacy Hardwoods, LLC, the Complaint seeks to hold other Defendants liable through piercing the corporate veil or on alter ego and joint tortfeasor theories of liability:

> 8. Defendant JEFFREY A. DUNSTER ("Dunster") is a resident of the City and County of Honolulu, State of Hawaii, and is the owner and operator of a business organization or enterprise involved in developing a tropical hardwood plantation on the Island of Hawaii, with emphasis upon growing koa trees, and related activities, utilizing the foregoing entities as a conduit for his operation (hereinafter, the "Dunster's Project").

> 9. Dunster is operating his organization
> through a network of related or affiliated
> entities, including Defendants Legacy Carbon,
> LLC dba Hawaiian Legacy Carbon, Hawaiian
> Legacy Reforestation Initiative dba Hawaiian
> Legacy Hardwoods dba Hawaiian Legacy Forests
> dba Legacy Forests dba Legacy Trees, HLH, LLC
> fka Hawaiian Legacy Hardwoods, LLC, Legacy
> Hardwoods, Inc. fka Hawaiian Legacy
> Hardwoods, Inc., and Legacy Holdings, LLC fka
> Hawaiian Legacy Holdings, LLC (collectively,
> the "Dunster Entities"), which however are
> all part of the same business enterprise with
> identity or substantial identity of ownership
> under common control and have no independent
> operations.

ECF No. 1, PageID #s 3-4

### 1.   Defendant Legacy Carbon, LLC, dba Hawaiian Legacy Carbon

The court takes judicial notice of the business registration documents available on Hawaii's Department of Commerce and Consumer Affairs website, https://hbe.ehawaii.gov/documents/search.html.  According to this website, no business has been registered with the name Hawaiian Legacy Carbon LLC the entity that signed the Services Agreement with the Coelho Way address.  But there is a company registered as Legacy Carbon LLC that has the same address listed for Hawaiian Legacy Carbon LLC in the Servicing Agreement.  See https://hbe.ehawaii.gov/documents/ usiness.html?fileNumber=85199C5 (last visited January 14, 2016).  It thus appears that Legacy Carbon LLC is doing business as Hawaiian Legacy Carbon LLC.  Legacy Carbon LLC has an address c/o Jeffrey A. Dunster, its agent.  See

6

https://hbe.ehawaii.gov/documents/business.html?fileNumber=
85199C5&view=info (last visited January 14, 2016).  Effective
November 17, 2015, its manager is Legacy Hardwoods Inc.  <u>See</u>
https://hbe.ehawaii.gov/documents/business.html?fileNumber=
85199C5&view=officers (last visited January 14, 2016).

### 2. Defendant Legacy Hardwoods Inc., dba Hawaiian Legacy Hardwoods, Inc.

Legacy Hardwoods Inc. also lists the same Coelho Way
address, and its agent is Dunster.  <u>See</u> https://hbe.ehawaii.gov/
documents/business.html?fileNumber=224471D1 (last visited January
14, 2016).  Dunster is also listed as its president and director.
No other officers are listed.  <u>See</u> https://hbe.ehawaii.gov/
documents/business.html?fileNumber= 224471D1&view=officers (last
visited January 14, 2016).  Legacy Hardwoods Inc. was formerly
known as Hawaiian Legacy Hardwoods, Inc.  <u>See</u>
https://hbe.ehawaii.gov/ documents/business.html?
fileNumber=224471D1&view=transactions (last visited January 14,
2016).

### 3. Defendant HLH LLC, fka Hawaiian Legacy Hardwoods LLC.

The Services Agreement calls Hawaiian Legacy Hardwoods
"HLH."  It is not clear whether the company referred to in the
Services Agreement is Hawaiian Legacy Hardwoods, Inc., or
Hawaiian Legacy Hardwoods LLC.  Hawaiian Legacy Hardwoods LLC is
another company with the same Coelho Way address.  Its manager is

also Jeffrey Dunster.  See https://hbe.ehawaii.gov/documents/

business.html?fileNumber=65846C5 (last visited January 14, 2016).

As of November 17, 2015, its members were Legacy Hardwoods Inc.

and Synergistic Connections, Inc.  See https://hbe.ehawaii.gov/

documents/business.html?fileNumber=65846C5&view=officers (last

visited January 14, 2016).  On or about March 7, 2014, Hawaiian

Legacy Hardwoods LLC changed its name to HLH LLC, a name similar

to the name "HLH" used in the Services Agreement.  See

https://hbe.ehawaii.gov/documents/business.html?fileNumber=65846C

5&view=transactions (last visited January 14, 2016).

> **4.  Defendant Hawaiian Legacy Reforestation Initiative, dba Hawaiian Legacy Hardwoods, dba Hawaiian Legacy Forests, dba Legacy Forests, dba Legacy Trees.**

Defendant Hawaiian Legacy Reforestation Initiative is a

Hawaii corporation with a Merchant Street address, not a Coelho

Way address.  See https://hbe.ehawaii.gov/documents/

business.html?fileNumber=242116D2&view=info (last visited January

14, 2016).  Dunster is listed as its president and as one of its

four directors.  See https://hbe.ehawaii.gov/documents/

business.html?fileNumber=242116D2&view=officers (last visited

January 14, 2016).  Hawaiian Legacy Reforestation Initiative is

listed as owning the following trade names or trademarks:

Hawaiian Legacy Forests, Hawaiian Legacy Hardwoods, Legacy

Forests, and Legacy Trees.  See https://hbe.ehawaii.gov/

8

documents/business.html?fileNumber=242116D2&view=tradenames (last visited January 14, 2016).

### 5. Defendant Legacy Holdings, LLC, fka Hawaiian Legacy Holdings, LLC.

Defendant Legacy Holdings, LLC, is a Hawaii limited liability company that shares the Coelho Way address.  Its agent is Dunster.  See https://hbe.ehawaii.gov/documents/ business.html?fileNumber=66081C5 (last visited January 14, 2016). It has two members, Dunster and Darrell Fox.  See https://hbe.ehawaii.gov/documents/business.html?fileNumber=66081C 5&view=officers (last visited January 14, 2016).  On March 7, 2014, it changed its name from Hawaiian Legacy Holdings, LLC, to Legacy Holdings, LLC.  See https://hbe.ehawaii.gov/documents/ business.html?fileNumber=66081C5&view=transactions (last visited January 14, 2016).

### III. PROCEDURAL BACKGROUND.

On October 21, 2014, Streamline sent Defendants a demand for arbitration of its claims that the Servicing Agreement and the Non-Circumvention Agreement had been breached.  See Decl. of John Winniki ¶ 15, ECF No. 25-1, PageID # 365; ECF No. 8-3 (copy of demand).  Defendants responded that only Legacy Carbon LLC, the company that had signed the Servicing Agreement, was subject to the mandatory arbitration provision.  See Winnicki Decl. ¶ 16, ECF No. 25-1, PageID # 365.  The parties selected former Hawaii Supreme Court Associate Justice James Duffy as

9

their arbitrator.  See id. ¶ 18.

    At a prearbitration hearing on February 23, 2015, the parties told the arbitrator that they had a disagreement about the scope of the claims subject to arbitration and as to which Defendants were subject to those claims.  Duffy allegedly told the parties that they needed to have a court decide those issues. Id. ¶¶ 19-20.

    On June 23, 2015, the arbitration case manager sent the parties an e-mail, asking about the status of the case.  See ECF No. 8-7, PageID # 203.  Counsel for Streamline responded, "At this time, we are still pursuing a court action to resolve this matter, and do not plan on resolving the claims through arbitration.  If through court order or agreement the parties submit to arbitration, we will contact you, if that is acceptable."  See ECF No. 8-8, PageID # 207.  The following day, June 24, 2015, counsel for Defendants responded, "There are some claims and counterclaims outstanding that undisputably are subject to arbitration.  The case should not be closed at this time."  Id., PageID # 206.

    On August 8, 2015, Streamline filed the present action in this court.  Count I asserts a breach of the Services Agreement arising out of an alleged failure to pay amounts owed to Streamline.  Count II asserts a breach of the Non-Circumvention Agreement, arising out of Defendants' alleged

direct contact with The Gold Standard.  Count III seeks declaratory and injunctive relief with respect to the alleged contract breaches.  Count IV asserts a breach of the implied covenant of good faith and fair dealing.  Count V asserts a claim of intentional interference with economic advantage.  Finally, Count VI asserts an unjust enrichment claim.  See ECF No. 1.

Defendants have filed two motions that overlap in many respects.  In the first, Defendants seek dismissal of Count I and of portions of Counts III through VI, to the extent they are premised on the Servicing Agreement.  Defendants argue that those claims are subject to the mandatory arbitration provision in the Servicing Agreement.  See ECF No. 7-1.  The motion also seeks dismissal of (1) Hawaiian Legacy Reforestation Initiative, dba Hawaiian Legacy Hardwoods, dba Hawaiian Legacy Forests, dba Legacy Forests, dba Legacy Trees, and (2) Legacy Holdings, LLC, fka Hawaiian Legacy Holdings, LLC.  Defendants contend that the allegations contained in the Complaint fail to allege facts that indicate any wrongdoing on the part of those Defendants.  Id. The motion also seeks dismissal of Dunster, arguing that no facts are alleged that would make him personally responsible under the contracts.  Id.

In its second motion, filed the same day as the first motion, Defendants seek to compel arbitration of Count I and of portions of Counts III through VI, to the extent they are

premised on the Servicing Agreement, arguing that those claims are subject to a mandatory arbitration provision.  See ECF No. 8-1.  Defendants also seek fees for having to seek to compel arbitration.  Id.

Streamline responded with a countermotion to compel arbitration of all of the claims asserted in the Complaint.  See ECF No. 25.  Streamline also seeks a stay of this action pending the proposed arbitration.  Id.

**IV.     THE COURT COMPELS ARBITRATION OF CLAIMS ARISING UNDER BOTH THE SERVICES AGREEMENT AND THE NON-CIRCUMVENTION AGREEMENT, BUT RETAINS JURISDICTION OF THIS MATTER TO DECIDE WHICH DEFENDANTS ARE BOUND BY THE ARBITRATION CLAUSE IN THE SERVICING AGREEMENT.**

The Federal Arbitration Act, or FAA, governs arbitration agreements in contracts involving interstate commerce.  See 9 U.S.C. § 2.  Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  Id.  "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition" a United States district court with jurisdiction "for an order directing that such arbitration proceed in the manner provided for in such agreement."  Id. § 4.

The FAA's provisions reflect a "liberal federal policy favoring arbitration."  Gilmer v. Interstate/Johnson Lane Corp.,

500 U.S. 20, 25 (1991) (quoting <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983)).  A court interpreting an arbitration agreement must resolve ambiguities as to the scope of the arbitration clause in favor of arbitration.  <u>See</u> <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 52, 62 (1995); <u>United Steelworkers of Am. v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 584-85 (1960) ("In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail . . . .").

       In determining whether to compel a party to arbitrate, a district court may not review the merits of the dispute; rather, the court's role under the FAA is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  <u>Cox v. Ocean View Hotel Corp.</u>, 533 F.3d 1114, 1119 (9th Cir. 2008) (citation and quotation marks omitted).  In construing the terms of an agreement, the court "appl[ies] general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."  <u>Wagner v. Stratton Oakmont, Inc.</u>, 83 F.3d 1046, 1049 (9th Cir. 1996).  If the court determines that a valid arbitration agreement encompasses the parties' dispute, the FAA

13

requires the court to enforce the arbitration agreement according to its terms.  Countrywide Home Loans, Inc., v. Mortgage Guar. Ins. Corp., 642 F.3d 849, 854 (9th Cir. 2011).

All parties agree that the arbitration clause contained in the Services Agreement is valid and enforceable, as all have moved to compel arbitration of claims arising out of the Services Agreement, although Defendants dispute which Defendants are properly sued for allegedly violating the Services Agreement. The court compels arbitration of the substance of those claims.

The parties dispute the arbitration clause's applicability to the claims arising out of the alleged breach of the Non-Circumvention Agreement.  The court determines that those claims must also be arbitrated.  The Services Agreement, executed after the Non-Circumvention Agreement, provides that Streamline shall provide "strategic introductions for [Legacy Carbon dba Hawaiian Legacy Carbon] affiliates for the purposes of raising capital or selling product (e.g. carbon offsets, RFID tags, etc." ECF No. 1-1, PageID # 22.  The use of the word "affiliates" indicates that the parties contemplated that Streamline would introduce companies related to Legacy Carbon dba Hawaiian Legacy Carbon to third parties that might raise capital or sell products.  Streamline alleges that Defendants, or Legacy Carbon dba Hawaiian Legacy Carbon's "affiliates," breached the Non-Circumvention Agreement.

14

According to Streamline, it provided introductions to key personnel at The Gold Standard's Cambridge office, thus facilitating certification of Defendants' project by The Gold Standard and greatly increasing the marketability of Defendants' carbon offset credits and products.  Defendants allegedly then began to interact directly with The Gold Standard.  See Complaint ¶¶ 35-36, ECF No. 1, PageID # 10.

The arbitration clause in the Servicing Agreement covers all controversies and claims "relating to" the Servicing Agreement.  The alleged breach of the Non-Circumvention Agreement "relat[es] to" the Servicing Agreement.  Thus, the arbitration clause applies to the claims arising out of the alleged breach of the Non-Circumvention Agreement.  See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967) (stating that reference to "Any controversy or claim arising out of or relating to this Agreement" was part of "broad" arbitration clause).  The Non-Circumvention Agreement has no meaning absent a separate agreement that the parties are agreeing may not be freely circumvented.

Not only does the Non-Circumvention Agreement depend on the existence of the Services Agreement, the Services Agreement could cause Streamline to provide services for free if it could be circumvented.  Under these circumstances, the court compels arbitration of the Non-Circumvention Agreement claims.

15

The court turns now to the question of which Defendants are subject to the mandatory arbitration clause.  Nonsignatories to arbitration agreements are sometimes bound by such agreements.

In Arthur Anderson LLP v. Carlisle, 556 U.S. 624, 631 (2009), for example, the Supreme Court held that a nonsignatory to an arbitration agreement could be bound by that agreement under traditional principles of contract law.  The Supreme Court noted that state law is applicable to the determination of which contracts are arbitrable under § 2 of the FAA.  "[T]raditional principles of state law allow a contract [such as an arbitration agreement] to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel."  Id.

The court begins its analysis of which Defendants must arbitrate by examining whether this is a matter to be determined by this court or by the arbitrator.  The Supreme Court has provided guidance on this issue, stating, "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."  AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986).

Courts examining the issue of whether a defendant is an alter ego of a signatory to an arbitration agreement have

16

therefore held that it is the court, not the arbitrator, who makes the decision as to arbitrability. See Local 36 Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Whitney, 670 F.3d 865, 868 (8th Cir. 2012) (stating that court decides whether nonsignatory to collective bargaining agreement must arbitrate as alter ego of signatory company); ARW Expl. Corp. v. Aguirre, 45 F.3d 1455, 1460 (10th Cir. 1995) ("The district court's arbitrability determination includes ascertaining whether a duty to arbitrate exists upon a finding of alter ego."); Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Local Union 42 v. Absolute Envtl. Servs., Inc., 814 F. Supp. 392, 398 (D. Del. 1993) ("It is the province of the district courts to determine as a threshold matter whether a party has a contractual duty to submit to arbitration.").

This court takes it upon itself to therefore decide the issue of whether nonsignatories to the Servicing Agreement are subject to the arbitration agreement. At this point, the court declines to dismiss claims against nonsignatories to the agreements. The Complaint alleges that Dunster operated his businesses in a manner that allows the piercing of the corporate veil, or allows liability based on an alter ego or joint tortfeasor theory. Although Dunster and other entities are not alleged to have personally done anything wrong, sufficient facts are alleged to justify holding them liable under the theory of

piercing of the corporate veil, alter ego, and/or joint

tortfeasor liability.  It is this court that will determine which

Defendants are subject to the arbitration clause.

**V.        THE COURT STAYS THIS CASE, EXCEPT FOR THE ISSUE OF
           WHICH PARTIES ARE SUBJECT TO THE ARBITRATION AGREEMENT.**

The FAA provides for a stay of court proceedings when

matters are referred to arbitration:

> If any suit or proceeding be brought in any
> of the courts of the United States upon any
> issue referable to arbitration under an
> agreement in writing for such arbitration,
> the court in which such suit is pending, upon
> being satisfied that the issue involved in
> such suit or proceeding is referable to
> arbitration under such an agreement, shall on
> application of one of the parties stay the
> trial of the action until such arbitration
> has been had in accordance with the terms of
> the agreement, providing the applicant for
> the stay is not in default in proceeding with
> such arbitration.

9 U.S.C. § 3.  A stay, however, is not mandatory, and a court may

alternatively dismiss claims subject to arbitration.  See Thinket

Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053,

1060 (9th Cir. 2004); Sparling v. Hoffman Construction Company,

864 F.2d 635, 638 (9th Cir. 1988); Doyle v. Hawaiian Cement, No.

CIV. 08-00017 JMS/KSC, 2008 WL 2230734, at *4 (D. Haw. May 29,

2008) ("A stay, however, is not mandatory and the court may

alternatively dismiss those claims that are subject to

arbitration.").  Because, pending its determination of which

Defendants must arbitrate, this court is not sending the parties

18

to arbitration, this court need not now decide whether to stay or dismiss this case pending the outcome of the arbitration.

Although this court is not at this moment referring this case to arbitration, the court exercises its inherent authority and stays all issues in this case except for the issue of which parties are subject to the arbitration agreement. See Landis v. N. Am. Co., 299 U.S. 248, 254 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). This stay furthers the parties' agreement to have the issues decided in arbitration while also allowing the parties to litigate in this court the arbitrability of the claims with respect to each Named Defendant.

## VI. ATTORNEY'S FEES.

Defendants seek their fees as a sanction under 28 U.S.C. § 1927 and under section 607-14 of Hawaii Revised Statutes. That request is denied.

Under 28 U.S.C. § 1927, a court may impose sanctions for multiplying proceedings. The statute reads:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

19

28 U.S.C.A. § 1927.  In other words, § 1927 authorizes a sanction only upon counsel.  Sneller v. City of Bainbridge Island, 606 F.3d 636, 640 (9th Cir. 2010).

To be sanctionable under § 1927, counsel's conduct must multiply the proceedings in both an "unreasonable and vexatious manner."  In re Girardi, 611 F.3d 1027, 1061 (9th Cir. 2010).  When such multiplication has occurred, the court may order sanctions upon finding recklessness or bad faith.  B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1107 (9th Cir. 2002).

"Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."  In re Keegan Mgmt, Co., 78 F.3d 431, 436 (9th Cir. 1996).  Under Keegan, even filings that do not make frivolous arguments may give rise to sanctions if the court finds that the filing party acted with intent to harass.  Id.  Since Keegan, the Ninth Circuit has held that recklessness may warrant sanctions under § 1927 even if the recklessness does not rise to the level of bad faith.  See Fink v. Gomez, 239 F.3d 989, 993 (2001) ("recklessness suffices for § 1927").  Ignorance or negligence does not meet this standard.  Id.

Streamline's conduct does not warrant sanctions under the circumstances.  Streamline attempted to arbitrate the claims presented in its Complaint, only to have Defendants argue that

20

claims under the Non-Circumvention Agreement were not arbitrable and that claims against nonsignatories to the Servicing Agreement were not arbitrable. Streamline appears to have filed the present case only after the arbitrator told it that it needed a court order or agreement to arbitrate. Although the claims against Legacy Carbon LLC, dba Hawaiian Legacy Carbon LLC, are clearly arbitrable, the court does not find that Streamline acted in bad faith or acted recklessly by including the arbitrable claims in its Complaint. Streamline is seeking to hold other Defendants liable under the Servicing Agreement. The arbitrator told Streamline that it could not assert claims against other Defendants absent a court order. The court does not find bad faith or recklessness under these circumstances.

The court also denies Defendants' fee request under section 607-14 of Hawaii Revised Statutes. That section states:

> In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid

21

> by the losing party; provided that this
> amount shall not exceed twenty-five per cent
> of the judgment.

Haw. Rev. Stat. Ann. § 607-14.  To the extent Defendants seek

fees under section 607-14, they have not yet established that

they are the prevailing parties.

**VII.      CONCLUSION.**

        With respect to the parties' motion seeking to compel

arbitration, this court determines that claims arising under the

Services Agreement and/or the Non-Circumvention Agreement are

subject to mandatory arbitration.  But before sending any party

to arbitration, this court will determine which parties are

subject to the arbitration agreement.  The court therefore stays

this action, except with respect to the issue of which parties

are subject to the arbitration agreement.  The court denies

Defendants' motion to dismiss and request for sanctions.


        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, January 27, 2016.




                    /s/ Susan Oki Mollway
                    Susan Oki Mollway
                    United States District Judge


Streamline Consulting Group v. Legacy Carbon LLC, et al., Civ. No. 15-00318
SOM/KSC; ORDER (1) DETERMINING THAT CLAIMS ARISING UNDER THE SERVICING AND
NON-CIRCUMVENTION AGREEMENTS ARE SUBJECT TO ARBITRATION AND DENYING MOTION TO
DISMISS; (2) DENYING REQUEST FOR FEES; AND (3) STAYING CASE EXCEPT WITH
RESPECT TO THE ISSUE OF WHICH DEFENDANTS ARE SUBJECT TO THE ARBITRATION
AGREEMENT