IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STREAMLINE CONSULTING GROUP LLC,<br><br>Plaintiff,<br><br>vs.<br><br>LEGACY CARBON LLC, dba HAWAIIAN LEGACY CARBON;<br><br>HAWAIIAN LEGACY REFORESTATION INITIATIVE, dba HAWAIIAN LEGACY HARDWOODS, dba HAWAIIAN LEGACY FORESTS, dba, LEGACY FORESTS, dba LEGACY TREES;<br><br>HLH LLC, aka HAWAIIAN LEGACY HARDWOODS, LLC;<br><br>LEGACY HARDWOODS, INC., aka HAWAIIAN LEGACY HARDWOODS, INC,;<br><br>LEGACY HOLDINGS LLC, aka HAWAIIAN LEGACY HOLDINGS, LLC;<br><br>JEFFREY DUNSTER; and<br><br>JOHN DOES,<br><br>Defendants. | CIVIL NO. 15-00318 SOM/KSC<br><br>ORDER DENYING MOTION FOR RECONSIDERATION |

**ORDER DENYING MOTION FOR RECONSIDERATION**

**I. INTRODUCTION.**

On January 27, 2016, the court determined that claims arising under the Services Agreement and/or the Non-Circumvention Agreement are subject to mandatory arbitration. Before sending any party to arbitration, the court stated that it would

determine which parties are subject to the arbitration agreement. The court stayed this action, except with respect to the issue of which parties are subject to the arbitration agreement. The court also denied Defendants' motion to dismiss and request for sanctions. See ECF No. 36.

On February 10, 2016, Defendants moved for partial reconsideration of the court's interlocutory order. See ECF No. 37. The sole argument raised in the reconsideration motion pertains to the court's determination that claims arising under the Non-Circumvention Agreement are subject to arbitration. See ECF No. 37-1, PageID # 483. The court denies the motion for reconsideration.

**II. RECONSIDERATION STANDARD.**

Defendants seek reconsideration of an interlocutory order. That is, Defendants seek reconsideration of an order that compelled arbitration of claims, but expressly left for determination which Defendants had agreed to arbitrate the claims. The reconsideration motion is governed by Local Rule 60.1, which allows such motions based on "(a) Discovery of new material facts not previously available; (b) Intervening change in law; and (c) Manifest error of law or fact." "Mere disagreement with a previous order is an insufficient basis for reconsideration." White v. Sabatino, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006). "Whether or not to grant reconsideration is

committed to the sound discretion of the court." Id. (internal quotation marks omitted).

**III. ANALYSIS.**

All parties agree that the arbitration clause contained in the Services Agreement is valid and enforceable. The arbitration clause is broad, stating:

> Any controversy or claim arising out of, or relating to this agreement, or breach thereof, which is not settled amicably by and between the signatories within a period of 30 days shall be settled through binding arbitration in accordance with the laws of the defending state.

Id., PageID # 24; Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967) (stating that reference to "Any controversy or claim arising out of or relating to this Agreement" was part of "broad" arbitration clause). This court determined that the Non-Circumvention Agreement "related to" the Services Agreement such that the arbitration clause applied to breach of contract claims arising out of the Non-Circumvention Agreement. Defendants' motion seeks reconsideration of that determination based on new evidence and also argues that this court committed a manifest error of fact. The court is unpersuaded.

To the extent the motion is based on new evidence in support of its argument that the two contracts were not related, the motion is denied. "To support a motion for reconsideration

based upon newly discovered evidence, the movant is obliged to show not only that the evidence was newly discovered or unknown, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing." Oyama v. Univ. of Haw., 2013 WL 3296567 (D. Haw. June 28, 2013); accord Hagan v. U.S. Nat'l Bank, 2014 WL 5465321 (D. Haw. Oct. 27, 2014). This court has denied motions seeking reconsideration of orders based on evidence and/or legal arguments that the party seeking reconsideration could have raised in connection with an original motion. See Barker v. Gottlieb, 2015 WL 181776 (D. Haw. Jan. 14, 2015). Because Defendants make no showing that the new evidence was previously unavailable or was newly discovered, the court disregards the new evidence, determining that it cannot support the present motion for reconsideration.

Even if the court considered the additional evidence, the court would not change its ruling. The additional evidence addresses the circumstances under which the Services Agreement, the Non-Circumvention Agreement, and a third contract were entered into. However, the circumstances and the third contract do not alter the unambiguous terms of the Services Agreement and the Non-Circumvention Agreement. Those unambiguous terms were the underpinning of the ruling that Defendants now challenge.

Defendants additionally argue that, even without the newly submitted evidence, the court committed a manifest error of

fact when it determined that the Non-Circumvention Agreement related to the Services Agreement, meaning that disputes under the Non-Circumvention Agreement had to be arbitrated pursuant to the Services Agreement. Citing the Declaration of Jeffrey Dunster, Defendants say that the "subject matter of the Services Agreement was assisting [Legacy Carbon LLC] in the process of obtaining carbon credit certification." ECF No. 29-1, PageID # 405. Defendants say that the "Services Agreement is not related to the NCA [Non-Circumvention Agreement] . . . used . . . solely to address the relationship between Hawaiian Legacy Hardwoods, LLC and those who desired to act as a finder of purchasers of Investment trees and Legacy Trees." Id. Defendants contend that there is a question of fact as to whether the Non-Circumvention Agreement "related to" the Services Agreement. The court disagrees.

The plain language of the Services Agreement indicates that it is broader than Dunster represents. Pursuant to the Services Agreement, Streamline was not only to "assist in implementing [Hawaiian Legacy Carbon's] business plan" by (1) coordinating and creating a retail program or plan to sell carbon offset and water quality and trading credits, it was also supposed to (2) introduce Hawaiian Legacy Carbon affiliates to people or companies that raised capital or sold products; (3) assist with retail strategies and grant proposals; and

(4) include Streamline's president's biography in Hawaiian Legacy Carbon and Hawaiian Legacy Hardwoods marketing documentation and website. ECF No. 1-1, PageID # 22.

The Non-Circumvention Agreement with Streamline, ECF No. 1-2, contained a requirement that Hawaiian Legacy Hardwoods not "circumvent, avoid, bypass, or obviate directly or indirectly, the creation or pursuit of the Collaboration [defined as the mutually beneficial business relationship that might involve third parties] by entering into any direct or indirect negotiations, communications, or transactions with, or by soliciting or accepting any business or financing from or on behalf of an Introduced Party." Id., PageID # 28. The plain language of the Non-Circumvention Agreement did not, as Defendants argue, limit itself to the context in which Streamline acted "as a finder of purchasers of Investment Trees and Legacy Trees."

Paragraph 32 of the Complaint alleges, "As part of Streamline's performance of services to the Dunster Entities pursuant to the Services Agreement in 2014, Streamline assisted the Dunster Entities in obtaining certification of the Dunster's Project for the Gold Standard Foundation (herein the 'Gold Standard')." ECF No. 1, PageID # 9. Paragraph 33 of the Complaint alleges, "The Gold Standard is an award-winning certification standard for carbon mitigation projects, recognized

internationally as the benchmark for quality in both the compliance and voluntary carbon markets." ECF No. 1, PageID # 10. Paragraphs 35 to 37 of the Complaint allege that after Streamline introduced Defendants to The Gold Standard, Defendants refused to pay Streamline and instead began direct contact with The Gold Standard. Id. The Complaint alleges that Defendants' project is listed on The Gold Standard Registry as producing 10,000 carbon credits. Id. Count II of the Complaint asserts a breach of the Non-Circumvention Agreement based on Defendants' direct contact with The Gold Standard.

Consistent with the allegations in the Complaint, the Declaration of Tiffany Potter indicates that the agreements were intended to create and coordinate a retail program selling carbon offsets and water quality credits, which included helping Defendants to obtain The Gold Standard certification. See ECF No. 22-1, PageID #s 316-17. In saying that the Services Agreement relates only to the obtaining of carbon credit certification, Defendants are asking this court to rely on Dunster's assertion to that effect even though Dunster's assertion flies in the face of contrary language in the Services Agreement itself. This court cannot ignore clear language in the Services Agreement. See State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Haw. 315, 324, 978 P.2d 753, 762 (1999) ("the parties' disagreement as to the meaning of a contract or its

terms does not render clear language ambiguous"); see also Hawaiian Ass'n of Seventh-Day Adventists v. Wong, 130 Haw. 36, 45, 305 P.3d 452, 461 (2013) (noting that parol evidence rule precludes extrinsic evidence varying or contradicting unambiguous and integrated contract).

Defendants demonstrate no manifest error of fact in this court's determination that the breach of the Non-Circumvention Agreement claim "relates to" the Services Agreement. As the court noted in its order,

> The Services Agreement, executed after the Non-Circumvention Agreement, provides that Streamline shall provide "strategic introductions for [Legacy Carbon dba Hawaiian Legacy Carbon] affiliates for the purposes of raising capital or selling product (e.g. carbon offsets, RFID tags, etc." ECF No. 1-1, PageID # 22. The use of the word "affiliates" indicates that the parties contemplated that Streamline would introduce companies related to Legacy Carbon dba Hawaiian Legacy Carbon to third parties that might raise capital or sell products. Streamline alleges that Defendants, or Legacy Carbon dba Hawaiian Legacy Carbon's "affiliates," breached the Non-Circumvention Agreement.
>
> According to Streamline, it provided introductions to key personnel at The Gold Standard's Cambridge office, thus facilitating certification of Defendants' project by The Gold Standard and greatly increasing the marketability of Defendants' carbon offset credits and products. Defendants allegedly then began to interact directly with The Gold Standard. See Complaint ¶¶ 35-36, ECF No. 1, PageID # 10.

> The arbitration clause in the Servicing Agreement covers all controversies and claims "relating to" the Servicing Agreement. The alleged breach of the Non-Circumvention Agreement "relat[es] to" the Servicing Agreement. Thus, the arbitration clause applies to the claims arising out of the alleged breach of the Non-Circumvention Agreement.

ECF No. 36, PageID # 468-69. On this motion for reconsideration, Defendants do not demonstrate that the Non-Circumvention Agreement was unrelated to the Services Agreement.

Even if the Non-Circumvention Agreement relates to a separate "Finders Fee Agreement," as argued by Defendants in the reconsideration motion, Defendants do not demonstrate that the Non-Circumvention Agreement does not also "relate to" the Services Agreement.

**IV. CONCLUSION.**

The court denies the motion for reconsideration.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 16, 2016.




/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Streamline Consulting Group v. Legacy Carbon LLC, et al., Civ. No. 15-00318 SOM/KSC; ORDER DENYING MOTION FOR RECONSIDERATION